Case number 20-3977 Denece Thomas v. Toms King Ohio LLC et al. Oral argument is not to exceed 15 minutes per side. Mr. Yedalyan for the appellant. Good morning Mr. Yedalyan, you may proceed. Thanks, good morning. Sean Yedalyan on behalf of the plaintiff Denece Thomas, may it please the court, I would like to request three minutes for rebuttal if I may. Very well. Thanks. FACTA and its card number truncation requirement are the result of extensive factual deliberations by Congress. Congress held extensive hearings and received testimony from approximately 100 witnesses before it enacted FACTA. Based upon such facts, Congress made the informed determination that card numbers must be truncated down to the last five digits in order to combat the risk of fraud. The district court erred by substituting its judgment for that of Congress. The district court also erred by completely disregarding the facts pled in the complaint. Unlike other FACTA complaints in other cases, plaintiff's complaint specifically pleads facts stating that the same card issuer, such as for example Chase Bank, can issue cards using different variations of the first six digits. Thus knowing that that Chase Bank issued a card will not necessarily reveal the first six digits of the card number. In contrast to these expressly pled facts and contrary to the determination of Congress, the district court held as a matter of law that harm can't result from the first six digits based upon its incorrect assumption that the name of the card issuer can be printed on the receipt and that name translates into only one sequence of six digits. It does not. In fact, as we sit here today, I have two Chase Bank cards, both issued to me personally, each with a different sequence of the first six digits. Even the defense concedes in their brief that in ruling on a motion to a facial challenge to the complaint that, quote, the complaint should be construed in the light most favorable to the plaintiff and all material factual allegations should be accepted as true, end quote. That's page five of the defense brief. The factual allegation... But doesn't the law require you to show an injury in fact? Well, I'm actually... That's one of the things that I wanted to address. I appreciate you bringing it up. There are different statutes will have different standards. And so what we can do is let me... I was going to talk about Spokio because I think that there is a fundamental misreading of that case that's been advanced by defendants, including the defendants in this case. And that actually illustrates the differences between the types of statutes. And so to preface it, to answer your question, some statutes, a violation of them in and of itself, in and of themselves will be sufficient and provide the basis for the concrete injury. Other types of statutes may require additional harm. And I'd like to get to that by getting into the facts of Spokio. Counselor, is it your position that the statutes can establish constitutional standard or a constitutional standing? Yes. Well, the violation of a statute, certain types of statutes can. But other types of statutes will require more. And Spokio... I mean, is standing a constitutional issue rather than a statutory issue? And can Congress establish constitutional standard or constitutional standing? I don't think so. I think the Constitution is what establishes standing, not statutes. And I mean, isn't that correct? Well, there are... Congress has the ability to legislate under Article One of the Constitution. And Article Three is the restraint on the ability of federal courts to hear certain types of cases. So even if Congress thinks there is standing, we still have to analyze whether the Constitution allows it under that circumstance. I agree. I agree. Yes. But what I'm saying is that Congress legislates. Congress, in other words, one way to put it is Congress can't go off and say, you know, in a vacuum, we are going to give you standing, here you go, period. That's my understanding. That's not what I'm saying. That's not what I'm suggesting. All right. But what Congress can do is enact legislation. And then the question becomes, if there's a violation of a particular piece of legislation, do the facts based on that particular violation support standing for purposes of Article Three? And Spokio highlighted that difference between the different types of statutes. And, you know, because certain types of violations may not provide Article Three standing, but other types of violations may. Okay. So tell me why this does, while Spokio does not. Okay. Please. Yes. And I want to use Spokio as the backdrop for this. And I want to. So Spokio involved a procedural statute. How do we know that? We know because the specific statute in Spokio involved a provision of the Fair Credit Reporting Act, the FCRA, which requires that consumer reporting agencies, quote, follow reasonable procedures to assure maximum possible accuracy, end quote, of information and consumer reports. That's the statute. So what are those reasonable procedures that must be followed? Congress did not say as part of the FCRA provision that was at issue in Spokio. Therefore, in statutes like the provision in Spokio, which are silent, it's up to courts to decide whether there's Article Three standing based upon the facts of each individual case. Now, what the Supreme Court held in Spokio is that some procedural violations of that particular FCRA statute may satisfy Article Three, but others may not satisfy Article Three. The Supreme Court also specifically stated in Spokio that, quote, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified, end quote. That's Spokio saying that and drawing that distinction and stating that to answer both your questions that the violation of certain types of even procedural statutes is sufficient without any additional harm to provide a basis for standing. However, since Congress was silent on the specific scenarios with the FCRA provision that was at issue in Spokio, the Supreme Court remanded to the Ninth Circuit to determine whether Article Three is satisfied based upon the facts of particular case. On remand, the Ninth Circuit considered the particular facts of that case and held that Article Three standing is satisfied. Now, unlike the procedural statute in Spokio, there's no guesswork when it comes to FACTA. With FACTA, Congress specifically prohibited printing any more than the last five digits of a card number on a receipt because it determined based on its fact-finding that such information presents an intolerable risk of harm. FACTA is therefore precisely that type of statute which Spokio referenced that can constitute an Article Three concrete injury in and of itself when a statute is violated based upon the very type of harm that Congress was trying to prohibit. So now that's one. No additional harm is needed. But here, we have pled that there is additional harm in addition to just the violation of statute. We don't believe we need any more, but we have pled that. And that is, by the way, in the form of having to take steps to safeguard and or safely dispose of a receipt with too much information that was printed on it in violation of FACTA. And I would stress that even in instances when some additional harm is required for Article Three other than just the violation of the statute, the case law holds that an identifiable trifle of harm will do. So the question is not of the magnitude of harm, even in instances where additional harm other than just the violation of the statute is necessary. Counsel, forgetting your argument for just a second, would you concede there was no actual harm in this case? No, I would not. Because the fact that information specifically prohibited by Congress was disclosed... I say actual harm. The fact they printed those numbers, that's the actual harm. It's a, it's a, it's a, it, it, once that is, I mean, to, to, to be, once that, once the bell is rung, you know, to be cliche about it, it can't be unrung. It's not the type of, it's not, for example, a procedural violation that can be remedied. And so... So how does, how does the identification of the financial institution increase the harm? Because it's the, you know, we've said that's what those first numbers identify. No, that is incorrect. That is incorrect. And it's directly contrary. That, that's a deterrent, that's a conclusion that the district court made disregarding the express facts fled in the complaint. So for example, as I said, as we sit here today, if I were to tell you that I have a chase card in my wallet, you wouldn't be able to tell me what the first six digits are just based on the financial institution's name. And that's because Chase Bank uses different sequences for the first six digits. So do other banks. And there are thousands and thousands of banks, credit unions, other financial institutions... They still just spell out the name of the institution. They could spell it out, but it's still not going to identify the, the, the name of the Chase Bank is not going to... Sequences may still just be the name of the institution. No, that's not accurate. And we pledged that in the complaint. How so? Is that in the record? It is. It's directly pled in the complaint. And for purposes of a motion for a motion to dismiss, as I said before, as the defense conceded, the factual allegations of the complaint have to be accepted as true. The fact that in other cases, nobody has pled that in a complaint and courts have misconstrued that, you know, those factual determinations, factual missteps or shortcomings can't be carried over into our case. You know, start rate decisive applies to legal principles, legal holdings. It doesn't apply to factual determinations, whether correct or incorrect from other cases. But here in our complaint, we've repeatedly and extensively explained how the name of a financial institution does not equate into a single set of six digits. That is flat out wrong. That is contrary to the express allegations of the complaint and the district court disregarded those express allegations. I mean, what more can we do other than plead what we plead and, and try to show the court that what, you know, some other courts have done and what this court drew from those other courts is an incorrect conclusion of what the facts are and how counsel counsel, what do you claim this? The first six digits represent that if it's not the financial institution, the first six digits will give you a host of information. They can tell you whether the type, what brand of card it is. For example, they can tell you whether it's a Visa card, MasterCard, they can tell you which bank issued it. They can tell you the exact type of card that was issued. So for example, let's say I have a first six digits that corresponds to a signature Visa rewards card. They can tell you the for example, if the rewards program is an airline rewards program, if the rewards program is some other kinds of rewards program, or if there is no rewards program at all. So there is a host of information that is disclosed by the first six cards, each with different benefits, each with different characteristics. Okay. It doesn't, it doesn't identify the customer, does it? The first six digits. Well, see, that's not the point. And no, no, no. I just, no. Could you answer my question? Does it? No, it does. It does not. It does not directly identify the customer, but Congress knew all of this and Congress heard from stakeholders, including from the credit card companies, by the way, just as a background of how this statute was enacted, the financial industry, including the credit card companies advocated for FACTA. Even before FACTA was enacted, they themselves had introduced legislation, their own requirements internally requiring the truncation of this information because they knew just how sensitive it is. And although it information and we've planned how that can be done in the complaint, not that we needed to, but we've pledged that phishing schemes, pretext calls, other types of fraudulent schemes can use the first six digits to exploit and obtain additional financial information about a customer. We've pledged that. We've pledged examples as well of how that can actually occur. We've also pledged how the first six digits factor in to the card industry algorithm. And if you don't have the first six digits, you're not going to pass the card industry algorithm and how revealing that first six digits makes it easier to both bypass the card industry algorithm, as well as engage in those other types of schemes. You're out of time. You can use your three minutes rebuttal now, or you can save it if you want. I will save it. Thanks. Okay. Any further questions at this time? Judge Sir Heinrich, Judge Donald. No. All right. Let's hear from the Appellee. Good morning, Your Honor. Greg Navarro for the Appellees, Tom's King, Tom's King Appellees. May it please the court. As Your Honors have already understand this, the issue before the court today is one of subject matter jurisdiction, specifically whether Ms. Thomas has met her burden to show that she has suffered an injury. In fact, that is both concrete and particularized and actual or imminent. In the absence of that, she cannot establish standing over the under the overwhelming precedent of the federal courts of appeals. In fact, the cases in the uniform holdings of the district courts in the Sixth Circuit, she has not established standing. There is no there is no injury. In fact, um, in the Spokane case specifically, the statement that the judge that the court said Congress cannot erase Article Three standing requirements by statutorily granting the right to sue a plaintiff who would not otherwise have standing. In this instance, Your Honors, there is that the only issue is that Tom's King provided the plaintiff a single transaction receipt containing some of the information from the credit card that she had just used to make a purchase. There's no allegation that the receipt was seen by any other person, that it was stolen, that it was lost, that it was misplaced, that the information was otherwise disclosed to anyone else. There's no allegation that the expiration date, which is also prohibited to be back to be included, was included on the receipt. And there's no allegation of any financial harm or even receiving this receipt. Okay, but Mr. Rivera, um, admittedly, um, the receipt violated the letter of FACTA because it contained more than the five numbers which are permissible under FACTA. So doesn't that, um, is there a willfulness element that's established by their actions? Well, the willfulness issue, the allegation of the complaint does state a technical violation of FACTA. Willfulness is an element that would need to be proved to recover, um, statutory and punitive damages. But no, I don't believe that the allegation itself established willfulness. There's going to be more evidence that's required of that. But, but what I think is important to your honors is that following Spokane and consistent with the overwhelming precedent of the federal circuit courts under FACTA and the uniform holdings of the district courts in the circuit, Ms. Thomas has not suffered an actual injury in FACTA. So the next question I have for you is, does, does a clarification act help you or hurt you? Well, I think it arguably helps us because by adding in the additional... I'm sorry, I didn't understand that. But I think it, it helps our position because by adding in the additional element of the, um, of the expiration date, there are several circuits that have all housed up, even with that, even with that, that new rule, um, the violation of that by including the expiration date on a receipt in and of itself does not create the article standing. That's the rule in the second circuit, the ninth circuit, and I believe the fourth circuit. Okay. But what if, if, as, uh, Mr. Edalion says that the inclusion of these first six letters, if we accept this argument that the inclusion of those first six letters does enhance the ability or probability of identity theft, is that enough to, to, to meet to meet the jurisdictional hurdle and why not? It's not enough, Your Honor. And first of all, it, the first six digits do identify, and Mr. Edalion said it in his, in his argument, they identify the bank, the brand, and possibly the program, the bank program. All of that information may lawfully and permissibly be included on the receipt. So the same information that Mr. Edalion just identified that those numbers tell you is information which may lawfully be added to the receipt by the credit card, by, by the, by the merchant. But the other issue, the secondary issue. Counselor, counsel, counsel, not so fast. I thought the statute was quite specific that, that no digits more, more than the last five can be disclosed that I thought that, that anything more than the last five was a violation. Am I incorrect about that? No, sir. You're not, you're not incorrect about that. But the point that I'm making is that the other, and this is what several other courts, including the Moransky case in the seventh and the 11th circuit have held, is that that same information may be included. In other words, the receipt could say, could say that the last five digits include, say, Bank of America, Chase, Chase, uh, you know. They could say the name of the institution, but they can't include the digits, right? Correct, correct. Okay, so here, here it is, it is a violation to include those six digits. I mean, I think there's a dispute about that. It is a technical violation. I do agree with that, but it also, but to your, to judge Donald's question, in order to create standing constitutional standing, it has to create an actual or imminent risk of harm. And consistently throughout the circuits and in the district court decisions in, in your, in the sixth circuit, the courts have consistently held that the inclusion of the first six digits and the inclusion of the last four digits in and of itself does not create standing. And the only case, your honors, the only case that's found otherwise is the Jeffries case. And in that instance, there were all 16 digits and the expiration date were included. And the so in, in, in this instance, um, there is, there is no, there is no evidence of concrete harm or an imminent risk of concrete harm by the inclusion of six digits, but out the inclusion of all of the middle middle digits that would be used to identify the individual card holders. All right, counsel under your argument, uh, the plaintiffs can't go to federal court because there's no remedy at all for the plaintiffs for this technical violation anywhere that there would be the courts of general jurisdiction of the states would have jurisdiction here in this case, but the federal courts do not because they are not because they're courts of limited jurisdiction under article three. All right. So they, so they could go to state court. They're not without remedy. That's correct. All right. So I wanted you to, to just comment a little bit on, um, this, uh, dissent by judge, uh, Wilson from the 11th circuit, who, who talks about this, um, uh, I guess, increased risk of identity theft. Uh, and why isn't he right in his dissent? And I understand that I'm not arguing, but I'm not arguing anything really. I'm, I'm really asking you about that, that contrary view that, that in some respects sounds logical. It sounds logical, your honor, but there still needs to be a, an imminent threat of harm. And if it, this court in the view book, who calls the decision last year, nine 46 F F third and eight 65, or somewhere thereabouts specifically said that when a plaintiff claims to have standing based upon the threat of a future industry injury, potential list of harm to their identity, it is not enough that the future injury is really likely to occur. The threatened injury must be certainly impending, certainly impending. And, and, uh, judge Boyko in his decision relied upon that language from this court to say, there's no certainly impending harm here. Um, um, and your honor, well, I, I do believe that some judges have made comments like the percent you mentioned in 11th circuit, the overwhelming of federal court circuits have said, no, let me give some examples. Um, I mentioned, uh, briefly, the Moransky case, that Moransky case was the first six digits and the last four digits, exact same as our case court said, no standing. The third circuit in the Kamal case, first six digits, last four digits, no constitutional standing. The ninth circuit, noble case, same case that found standing on the man in Spokane found no standing under FACTA in the case where it was the first digit and the last four digits. And then your honors, on top of that, in your, in the sixth circuit specifically, judge Collins in the McLeod case, first six, last four, no standing. Judge Everett, I'm sorry, judge Lipman in the Everett case, first six, last four, no constitutional standing. And then judge Pamela Reeves in the Hollinger case, that case had the first six and the last four digits, as well as the expiration date. And she said no constitutional standing under article three, because no actual or imminent risk of harm. And then judge Boyko in our case had the first six and the last four digits. So, uh, and interestingly, so we were, we're in a situation where over and over and over again, courts have looked at this issue under FACTA in light of Spokane. And they've simply said, there's no actual or imminent risk of harm that would allow this court to hear this case. And again, the only exception to that is Spokane. I'm sorry, the only exception to that is Jeffreys in the DC circuit, but Jeffreys is distinguishable and Jeffreys distinguished itself from the other cases and said, this is the nightmare scenario because we have all 16 plus the expiration date. Um, and, um, so, and then Moransky specifically distinguishing Jeffreys and said, it's a different case. It's a different potential risk of harm. So I think for those reasons, your honors, um, that we believe there's no standing. Uh, um, I would be glad to have to answer any of the questions that your honors would like. Uh, I have none. Judge Sir Heinrich, do you have any further questions? Judge Donald? No. All right. Thank you, counsel. Uh, three minutes rebuttal. Thanks. Um, with respect to when the harm occurs under FACTA, Congress specified that the harm they were trying to prevent occurs at the point of sale. Congress did not say we're looking for identity theft or events that occur after the point of sale. The risk that they were trying to prevent is at the point of sale. Now we've all heard of, uh, you know, breaches by Home Depot, Target, et cetera, legions of, uh, uh, uh, uh, uh, merchants and other entities that have breaches. And often what happens is it can take years before information is misused. Um, it does, it's not necessarily when it's acquired. And, um, um, the other fact is that, uh, Congress knew that it's very difficult sometimes to pinpoint the source of which breach. I mean, I can be a customer of Home Depot and Target and I can have my information compromised. Where did that come from? And so Congress decided that at the point of sale, there has to be consequences or breaches. And once that breach occurs, there is a remedy that consumers can opt for by way of statutory damages. If they can show the causation, then they can go ahead and seek actual damages if they can pinpoint the merchant. But you know, this is stuff that takes time. And as I said before, once the bell is rung, it can't be done wrong. And Congress knew that and, and engaged in the fact-finding mission, including from the stakeholders, from credit card companies and financial institutions in deciding to enact this law, that fact-finding mission and its determinations cannot be undone by a judicial fiat and substituting a judicial opinion in place of the factual determinations and investigations by Congress. As I said, counsel, you say Congress deemed that this would create a risk of harm. Is a risk of harm the same as a concrete expression of harm? I mean, standing, standing requires imminent concrete injury is a risk that. Yes, it is. In the Macy case, Macy versus GC services case, this court held that an FDCPA claim in letters from debt collectors where information was, the statutory language was not used. Instead, other alternative language was used that the fact that Congress was trying to ensure that the correct language was used, what Congress mandated should be used, wasn't used, that that is in and of itself sufficient to create an article three injury. The defense argued in that case, there's no harm. And that if they made the same eminence arguments, they argued that potentially in the future, there can be harm resulting from the fact that different language was used. But currently there is no harm. And if you're going to look at that future potential harm, then there wouldn't be any concrete injury. This court held that Congress knew what it was doing. It provided specific language to prevent certain types of risk of harm. And because that language was, was not provided, despite the fact, and everybody conceded there was no actual harm in that case. Despite that, this court held that article three standing is satisfied. Now, counsel mentioned in contrast, the Buchholz case and in Buchholz, the plaintiff alleged that they suffered anxiety from letters from a debt collector and their anxiety emanated from their claim that they were concerned about future litigation. And this court distinguished that from the Macy case and held that anxiety about future possible lawsuits isn't impending harm because there was no actual lawsuit threatened at the time the plaintiff filed suit. There was no actual lawsuit pending and there was no, we weren't talking about language about that Congress determined. What harm is pending for your client? My client's information has been disclosed. Now, the other thing I want to mention is that once information is printed on a receipt, that's not the only source of the information. There's an electronic, the merchant also has a record of that receipt in electronic form. And so Congress knows this, Congress knows that once that information is there, you know, they argue, well, nobody else got it. That information is retained electronically. It's floating around out there, regardless of what our customer's receipt, the whereabouts of our customer's receipt. A teller or a cashier can be looking at the receipt when they hand it to the customer. Another customer can be looking over the shoulder and getting it, but it also resides in electronic form. And just because you maintain the receipt itself doesn't mean that that information doesn't reside elsewhere in electronic form or otherwise it does. And Congress knew all these facts and made an informed determination. Here we are, and, you know, defendants, other courts have tried to second guess that factual analysis, the evidence that was presented, the testimony that was presented to Congress. And again, this wasn't just consumer protection groups doing this. This was the industry, the card industry and other financial stakeholders pushing for this because they knew the importance of redacting, truncating this information because they knew that once it's out there, it can be misused. And in the Jeffries case, the court likened this to a grenade. All right. Thank you. Thank you, counsel. You're out of time. Any further questions? Judge Sir Heinrich? Judge McDonnell? Okay. See no more. See no further questions. Thank you very much, counsel. Case will be submitted. We call the next case. Thanks.